# UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA



In the Matter of the Search of
**The Residence Located At
3640 Village Drive, Unit D
Carlsbad, California**

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER:  '07 MJ 08 08

unsealed
06-70-08

---

I ___Scott McGeachy_____ being duly sworn depose and say:

I am a(n) _____IRS - Criminal Investigation Special Agent_____ and have reason to believe

that ___ on the person of or _X_ on the property or premises known as

**3640 Village Drive, Unit D, Carlsbad, California  (more fully described in Attachment A)**

in the Southern District of California, there is now concealed a certain person or property, namely

**See Attachment B**

SEALED by
Magistrate Judge Leo S. Papas
Date ____APR 13 2007____

Leo S. Papas
US Magistrate Judge

which is the fruits, instrumentalities and evidence

concerning a violation of Title __18__ United States Code, Section(s) 1028(a), 1344, 1029, 371 and 1956(a)(1)(B)(i).
The facts to support a finding of Probable Cause are as follows:

**See attached affidavit - continued on the attached sheet and made a part hereof**.

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

___APR 13 2007  435 pm_____ at
_Date/Time issued_

___San Diego, California_____

_United States Magistrate Judge_
_Name and Title of Judicial Officer_

_____
_Signature of Judicial Officer_

Attachment A

## LOCATION TO BE SEARCHED

Residence of Brian Maier identified as:  3640 Village Drive, Unit D, Carlsbad, California

Further described as follows:

a single story, multi-unit stucco structure brown in color with a composite shingle roof located on the east side of Village Drive.  The service drive-way dead ends in front of the residential structure.  Unit D is the farthest east unit of the building.  A short concrete walkway leads from the drive-way to the front door.  The front door of the unit faces south and is burgundy in color.  To the left of the front door is a carport bearing a sign "3640 D."  To the right of the front door are two storage closets.  A small window and dark colored gate are located to the right of the storage closets.  A small palm tree and rose bush are located in the front yard area.

## AFFIDAVIT OF
## WILLIAM L. BEHAN

SEALED by
Magistrate ___ APR 13 2007
Date ____

Leo S. Papas
US Magistrate Judge

## I. Introduction

1. I William L. Behan, being first duly sworn on oath, depose and say I am a deputy sheriff employed by the Clackamas County Sheriffs Office (CCSO) and am currently assigned as a Drug Crimes Investigator assigned to the Special Investigations Unit (SIU) which focuses on controlled substance investigations.

## II. Training and Qualifications

2. I have been employed as a deputy sheriff at CCSO for over eight years and have been a Police Officer in the State of Oregon since August 1995. I have attended and have successfully completed over 1300 hours of police training at the Department of Public Safety Standards and Training (DPSST), in service training offered by CCSO, Indoor Marijuana Investigative Course, Drug Enforcement Administration Basic Investigators Course, California Bureau of Narcotics Enforcement Clandestine Laboratory Investigators Course and the Oregon Narcotics Enforcement Association (ONEA). Portions of this training were devoted to the investigation of the crimes of:

   a. Title 18, United States Code, Section 1956, Money Laundering

   b. Title 18, United States Code, Section 1028, ID Theft,

   c. Title 18, United States Code, Section 1344, Bank Fraud,

   d. Title 18, United States Code, Section 371, Conspiracy

    e.  Title 18, United States Code, Section 1029, Access Device Fraud

    f.  Title 18, United States Code, Section 2314 Interstate Transportation of Stolen Goods.

3.  I have personally been involved in obtaining both state and federal search warrants, assisting other law enforcement officers in preparing both state and federal search warrant affidavits, executing both state and federal search warrants obtained by other police officers, and assisting in processing of seized stolen identity and stolen property within Oregon.  My experience includes, but is not limited to, personal observations and seizure of stolen property as well as stolen identity.

4.  I have received in-service training in, the laws and procedures in working with confidential reliable informants, the methods and techniques of suspects trafficking in stolen identity and stolen property.

5.  The information in this affidavit pertains to an ongoing investigation into the criminal conspiracy of Alfonso Rene Lopez-Ramirez (date of birth 12-19-79), Antione Lamont Lawrence (date of birth 05-04-73), Greggory Michael Zimmerman (date of birth 01-11-76), Bradley David Maier (date of birth 12-27-58) and others.

6.  I obtained the information contained in this affidavit from these informants and sources of information: Cory Don Smith (date of birth 04-12-79), Donald Brian Wright (date of birth 05-17-83), Alfonso Rene Lopez-Ramirez (date of birth 12-19-79) as well as police reports, physical evidence, surveillance, interviewing other police officers/agents, and from my own investigation.

7. A law enforcement officer who provided information contained within this affidavit is; United States Marshall Bud Delay from the Portland Oregon District Office.

8. This affidavit provides probable cause that Alfonso Rene Lopez-Ramirez (date of birth 12-19-79), Antione Lamont Lawrence (date of birth 05-04-73), Greggory Michael Zimmerman (date of birth 01-11-76), Bradley David Maier (date of birth 12-27-58) and others have been and are involved in a criminal conspiracy to commit the crimes of:

   a. Title 18, United States Code, Section 1956, Money Laundering

   b. Title 18, United States Code, Section 1028, ID Theft,

   c. Title 18, United States Code, Section 1344, Bank Fraud,

   d. Title 18, United States Code, Section 371, Conspiracy

   e. Title 18, United States Code, Section 1029, Access Device Fraud

   f. Title 18, United States Code, Section 2314 Interstate Transportation of Stolen Goods

9. The pattern of their activities and their associations shows they have continued the same criminal behaviors from at least 2004 to the present. A search of their persons, vehicles, and residences will reveal historical evidence of their criminal conspiracy to commit the crimes alleged. Further, I have probable cause to believe that a search of the persons, vehicles and residences set forth in Attachment "A" will reveal evidence of the crimes alleged.

10. I know from my own investigation and from speaking with United States Marshall Bud Delay that the above mentioned address is described as follows:

3

a)  3640 Village Drive Apartment "D", Carlsbad, San Diego County, California is a single story, multi-unit stucco brown in color with a composite shingle roof located on the east side of Village Drive. The service drive-way dead ends in front of the residential structure. Unit D is the farthest east unit of the building. A short concrete walkway leads from the drive-way to the front door. The front door of the unit faces south and is burgundy in color. To the left of the front door is a carport bearing a sign "3640 D." To the right of the front door are two storage closets. A small window and dark colored gate are located to the right of the storage closets. A small palm tree and rose bush are located in the front yard area. **Following his arrest by the United States Marshals Service on April 13, 2007, at the above-noted address, Maier admitted that he currently lives at the above-noted address and that his rent payment at that location is current through the end of the month.**

## III. Current Investigation

11.  On March 21st, 2007 Special Agent Scott McGeachy, Internal Revenue Service (IRS), and I obtained federal search warrants ~~based on the~~ ~~attached federal search warrant affidavit that by reference is incorporated~~ ~~herein. A copy of that affidavit is attached hereto as "Attachment C."~~ The federal search warrants were for the persons, residences and vehicles disclosed in the attached search warrant affidavit. The following is an account, in brief, of the information discovered on the date the mentioned search warrants, March 21st, 2007 and a subsequent debrief of Alfonso Lopez-Ramirez on March 27th, 2007. The following information is specific to information obtained about Bradley David Maier (date of birth 12-27-58)

4

12.  Alfonso Lopez-Ramirez told me he has known Bradley Maier for many years. He told me he met Maier through Antione Lawrence and has remained friends and business partners with Maier until his (Lopez-Ramirez's) arrest on March 21st, 2007. Lopez-Ramirez told me he started hanging around with Antione Lawrence in 2001 or 2002, which led him to meet Gregory Michael Zimmerman (aka "G"), Mahria Zimmerman, and Bradley David Maier (aka "B").

13. Lopez-Ramirez told me after meeting Antione Lawrence, Bradley Maier and the other mentioned conspirators he began working with Lawrence and Maier doing identity thefts using other people's credit cards. Lopez-Ramirez told me while he was learning this new trade Lawrence liked to keep him at arms length and not let him know too much.

14. Lopez-Ramirez told me he understood from the beginning that Bradley Maier, Greg Zimmerman, and Antione Lawrence were all three partners in the organization. Lopez-Ramirez told me he knows Bradley Maier as the "old man" or as "B." Lopez-Ramirez told me Bradley Maier was partnered up with Lawrence and that they had been crime partners for quite some time before Lopez-Ramirez met either one of them. I know from my own investigation that there are police reports that connect Lawrence and Maier as far in the past as 1993.

15. Lopez-Ramirez told me after going into business with Lawrence, Zimmerman, and Maier, he began to travel out of state with these individuals. Lopez-Ramirez told me in a short period of time he had gained Lawrence, Zimmerman and Maier's trust regarding other criminal activities they were involved in, specifically burglarizing professional buildings. Lopez-Ramirez told me he gained this trust through his unwitting discovery of lock picks in Lawrence's car shortly after they started hanging around together.

5

16. Lopez-Ramirez told me he figured out Lawrence had been committing burglaries utilizing lock picks to gain entry. Lopez-Ramirez told me Lawrence indicated to him that since he knew about the lock picks that he was "in" and he would have to stay in and assist with the organization. Lopez-Ramirez said from that point forward he sort of did an apprenticeship under Lawrence wherein Lawrence and Maier taught Lopez-Ramirez how to choose which businesses to burglarize and how to pick locks and gain access into the businesses.

17. Lopez-Ramirez told me after forming a friendship with Lawrence, Maier and Zimmerman he traveled to states including California, Colorado, Nebraska, Missouri, and many others. Lopez-Ramirez told me he could not remember how many states he had been in and could not remember how many times he had traveled out of state with the mentioned co-conspirators. Lopez-Ramirez told me there were so many incidents of identity theft and burglary that he would have to sit down and really think about how many places he had actually hit over the period of the last 6 to 7 years.

18. Lopez-Ramirez told me each and every time they traveled out of state Lawrence would be waiting at the destination with Maier when he arrived and would give him "work." Lopez-Ramirez clarified that "work" means taking other people's credit cards and driver's licenses in order to use them for personal gain such as buying merchandise or cashing large denomination checks. Lopez-Ramirez told me on each one of these excursions to other states he would also do burglaries and identity thefts with Lawrence and Maier.

19. Lopez-Ramirez told me he went to California several times between 2004 and 2006. Lopez-Ramirez told me when he, Lawrence and Maier went to

California they actually went to a house that was in the San Diego area. Lopez-Ramirez told me when they went to this residence he saw it was a very upscale, nice residence. Lopez-Ramirez told me it was obvious Maier owned the residence. Lopez-Ramirez based this assumption on the fact that Maier had personal items, such as clothing, furniture and pictures in the residence.

20. Lopez-Ramirez told me he knows Maier partially from Lawrence but also knows Maier through Maier's son, Reggie Maier. Lopez-Ramirez described Reggie Maier as a white male adult who is younger than him and is kind of a hanger-on want-to-be gangster.

21. Lopez-Ramirez told me during his and the mentioned co-conspirators criminal activities they traveled to Las Vegas, Nevada, where they withdrew cash using stolen credit cards and identification. Lopez-Ramirez told me they went to many different Casinos in Las Vegas, used the mentioned items to purchase credits from machines in the casino, then simply went to the "cage" and turned in the credits for cash.

22. Lopez-Ramirez told me one of the things that he felt distinguished all of the members of his crew was that they all drove nice cars. Lopez-Ramirez told me every one of the group members in this conspiracy like to drive high-end German automobiles i.e. Lawrence driving a BMW convertible, Zimmerman driving a 2002 BMW, Maier driving a 1999 Porsche Carrera, and Lopez-Ramirez himself driving a 2000 BMW convertible.

23. Lopez-Ramirez told me Maier is as involved with identity theft and had taught the rest of them. Lopez-Ramirez told me he is the one that taught everyone how to pick locks and how to get into businesses avoiding security, and how to come up with the "gift of gab" to get out of being

scrutinized by people they encounter. Lopez-Ramirez told me he has always had a relatively good relationship with Maier and has always made decent money with him.

24. Lopez-Ramirez told me he knows Maier travels a lot and always does it under his assumed name of John Smith. Lopez-Ramirez told me he knows Maier travels under that name because Lopez-Ramirez made Oregon identification for Maier under that name. Lopez-Ramirez told me he knows Maier has since gone to Oregon DMV and gotten an actual drivers license in the name John Smith.

25. Lopez-Ramirez told me he knows Maier moved out of his apartment in Vancouver, where he lived with his wife Loren, in late 2006 or early 2007. Lopez-Ramirez told me the apartment was rented in Amy Todd's name and Loren's name to keep Maier's identity secret. Lopez-Ramirez told me he knows Maier lived there for a period of months and thinks that is the longest time Maier has ever lived in any one place since Lopez-Ramirez has known him. Lopez-Ramirez told me out of everyone who is connected with his crew, Maier is the most likely to flee the United States.

26. Lopez-Ramirez told me he knows Antione Lawrence, Bradley Maier and Greg Zimmerman were arranging for offshore bank accounts in several possible countries at the time Lawrence and Zimmerman were arrested in 2006. Lopez-Ramirez told me he knows they were discussing different countries because they were trying to set up accounts in countries which do not cooperate with the United States government. Lopez-Ramirez told me he knows Maier was going to set up the offshore accounts in the company name of ADM and Associates or A and M and Associates. Lopez-Ramirez told me he does not know if the accounts were ever set up, but thinks it is likely they were.

8

27. Lopez-Ramirez told me he has had more than one conversation with Maier, in which Maier claimed he would flee the United States if their crew ever got busted by police. Lopez-Ramirez said Maier told him he had enough money hidden that he would buy a yacht and flee to the Caribbean where the police would never find him. Lopez-Ramirez told me he thinks Maier would do anything to keep from going back to prison.

28. Lopez-Ramirez told me after Zimmerman and Lawrence got busted in L.A. in 2006, Maier became very nervous and unpredictable. He said Maier moved from southern California, to Vancouver Washington to try and avoid contact with police.

29. Lopez-Ramirez told me he knows Maier bought a 1999 black Porsche Carrera from Freeman Motors in Lake Oswego sometime in 2006. Lopez-Ramirez told me Maier bought the Porsche under the name John Smith, to try and conceal the actual ownership from law enforcement. Lopez-Ramirez told me he believes Maier is confident enough in the alias John Smith that Maier would actually forward mail such as financial documents, car loans, credit card payments and other correspondence to his new address.

30. Since my conversation with Lopez-Ramirez I have researched the name John A. Smith. I found contained within the files of the computer seized by S/A Kevin Downs USSS in L.A. in 2006, a W-2 tax document bearing the name John Smith, with a SE Twilight Lane, Sandy, Oregon address and a post office box in Estacada Oregon. In addition the social security number on the W-2 belongs to a person who is deceased according to the State of Oregon death index. I saw the company name listed as the employer on the W-2 is ADM and Associates, which is similar to A and M and Associates, which is what Lopez-Ramirez thought it was.

9

31. Further investigation has revealed that the P.O. Box in Estacada and the Twilight Lane addresses both belong to Bradley Maier's brother, Dennis Maier, as well as the social security number reflected on the ADM and Associates pay stub in the name John Smith.

32. I have spoken with U.S. Marshall Bud Delay who has given me the following information. Delay told me he has been attempting to locate Maier on an outstanding federal parole violation warrant. Delay told me his investigation revealed an apartment in Vancouver Washington under the names Amy Todd and Loren LNU, but is known to be Maier's domestic partner. Further investigation by Delay shows one of the names listed on the rental agreement is John Smith and the employer is listed as ADM and Associates. Delay located a mail drop in Oceanside California which is associated to Loren LNU and John Smith.

33. I contacted Freeman Motors in Lake Oswego Oregon and served them a Clackamas County Circuit Court Grand Jury Subpoena for any transactions in the name John Smith, regarding a Porsche or any other vehicle. Documents provided by Freeman Motors reflected two different vehicle purchases by John A. Smith (date of birth 01-01-61). The first was a BMW M5, purchased in mid-2005, the latest purchase was for a 1999 Porsche 911 (Oregon License Plate CU13325), purchased in early 2006. The records showed both vehicles had been financed, with a minimum down payment. Further, I noted Maier (aka Smith) used two different Visa cards to make the down payments. I saw one of the cards was in the name John Smith, the other was in the company name of "ADM and Associates". I saw Freeman Motors had taken a photocopy of Maier aka Smith's Oregon drivers license. I saw the photo was actually Bradley David Maier, but showed the name John Smith.

10

34. During my contact with Freeman Motors I actually spoke to the salesman who dealt with Maier directly, Scott Keil. In speaking with Keil he told me he sold the BMW M5 to Maier in 2005, and then took the trade-in of that vehicle from Maier in 2006, when Maier bought the mentioned Porsche 911. Keil told me he remembered Maier as being a very nervous individual who claimed to take twenty five Zanax pills at a time to control his nervous condition. Keil told me he had a very hard time financing Maier because Maier was using the name John Smith (date of birth 01-01-61).

35. Keil told me that name caused concern for the finance companies he deals with, so it took more work than usual. Keil told me for these reasons the transaction with Maier stood out to him. Keil looked at the photocopy of the Oregon driver's license Maier had used at the time of the purchase bearing the name "John Smith", but with Maier's photograph on it. Keil told me the photo was accurate and he could positively identify Maier by that photograph.

36. In the documents provided to me by Keil was the mentioned photocopied driver's license bearing Maier's photo, and other finance documents. I saw contained in those documents was the name John Smith (date of birth 01-01-61), with a social security number that did not belong to Bradley Maier or John Smith. In addition I saw two photocopies of Visa credit card receipts, one in the name John Smith the other in the name ADM and Associates. Both of the Visa card receipts were for Freeman Motors and listed the account numbers. I saw the card numbers were different between the two cards. I saw the card in the name John Smith was used on February 17, 2006, the other in the name ADM and Associates was used on February 22nd, 2006.

37. I have done investigation into the Oregon driver's license presented to Freeman Motors by Maier in the name John Smith. Using the Oregon DMV database I discovered Bradley Maier has actually gone to Oregon DMV and gotten an Oregon driver's license bearing Maier's photograph but with the name John Alan Smith (date of birth 01-01-61)

38. On April 12th, 2007 I was contacted by U.S. Marshall Bud Delay. Delay told me using one of the Visa card receipts Freeman Motors had provided, he discovered Bradley Maier (aka John Smith) had rented a car in Carlsbad California approximately one month before this date. Delay told me on April 10th, 2007 Maier had returned the car to the mentioned rental car company.

39. Bud Delay told me he contacted the rental car company and inquired about the recent activity on the Visa card in the name John Smith. Delay told me upon contacting the rental car company they gave him information from the rental receipt in the name John Smith. Delay told me information on that receipt gave a home address for Maier/Smith of "3640 Village Drive Apartment "D", Carlsbad, California. Delay told me on April 13th, 2007 he would have United States Marshall's from San Diego, California check the Carlsbad address.

40. On April 13, 2007 I received a phone call from Bud Delay, who told me his United States Marshall's in San Diego had gone to the previously mentioned Carlsbad California address. Delay told me when they arrived they found Bradley Maier's 1999 Porsche 911 Carrera, bearing Oregon license plate CU13325, which is registered to John Alan Smith (date of birth 01-01-61) parked in the parking space for Apartment "D" at 3640 Village Drive, Carlsbad, California. I know from my own investigation and from information provided to me by U.S. Marshall Bud Delay that Bradley Maier has an Oregon driver's license in the name John Alan Smith and

that Bradley Maier purchased the mentioned Porsche 911 in the name John Smith from Freeman Motors in Lake Oswego Oregon. Further, I know this Porsche is still registered to John Smith, who is claiming, according to the rental car company, the listed Carlsbad California address. Delay told me at the time of this affidavit there are currently U.S. Marshall's watching the listed Carlsbad address to attempt to locate Bradley Maier.

41. Later on April 13, 2007 I received a call from Bud Delay. Delay told me U.S. Marshall's in Carlsbad, who had been watching Maier's residence had seen Maier leave apartment "D" 3640 Village Drive, Carlsbad, California. Delay told me Bradley Maier had seen U.S. Marshall's near his apartment and fled back inside the apartment. Delay told me U.S. Marshall's on scene had pursued Maier into the apartment, where he was taken into custody without incident on his outstanding federal warrants.

42. Bud Delay told me after Maier was taken into custody, U.S. Marshalls contacted Maier's female friend, Loren Redmond, who was in the apartment when they entered. Delay told me Redmond was being detained, Maier was in custody and U.S. Marshalls were securing the mentioned apartment, while a search warrant was prepared and applied for.

43. At the time this affidavit is being written federal agents from the Internal Revenue Service are securing the apartment of Bradley Maier and Loren Redmond at 3640 Village Drive Apartment "D", Carlsbad, California.

## VI. Conclusion

44. Based on the facts as set forth in this affidavit there is probable cause to believe that there exists an ongoing criminal conspiracy to commit the listed crimes involving Alfonso Rene Lopez-Ramirez (date of birth 12-19-79), Antione Lamont Lawrence (date of birth 05-04-73), Greggory Michael Zimmerman (date of birth 01-11-76), Bradley David Maier (date of birth 12-27-58), and others.

45. I further have probable cause to believe that the evidence listed in attachment "B" will be found at the address of "3640 Village Drive Apartment "D", Carlsbad, California" and in the "1999 Porsche 911 Carrera, bearing Oregon license plate number CU 13325"     will reveal evidence of the crimes being investigated.

46. Based on my own training and experience I know that the following facts and practices apply to the investigation of the crimes alleged;

47. I know that individuals involved in illegal activities, including fraud in connection with aggravated identity theft often maintain at their residence records of their illegal activities, actual evidence of their illegal activities, and the instrumentalities of their illegal activities for a long period of time. Based on my knowledge, training and experience, I know that persons who keep records, evidence, and instrumentalities of illegal activity use computers, related equipment, and software for electronic data processing and for storage of such records, evidence, and instrumentalities.

<u>COMPUTER SEARCH PROTOCOL</u>

48.. With the approval of the court in signing this warrant, agents executing this search warrant will employ the following procedures regarding computers that may be found on the premises which may contain information subject to seizure pursuant to this warrant:

14

Forensic Imaging

      a.     There is probable cause to believe that any computers encountered during this search may have been used in committing the offenses described herein and may contain personally identifiable information of victims of the offenses. Consequently, the computer equipment, including any external storage devices will be seized and transported offsite for imaging. A preliminary analysis of the images will be conducted within thirty (30) days to confirm that the computers were used in committing the subject offenses. If so, the computers will not be returned. If not, any computer without obvious evidence of being used in the commission of the charged offenses will be returned to its owner. For computers that are retained, the owner may apply in writing to the undersigned for return of specific data which is not subject to seizure which the owner requires. The Federal Bureau of Investigation will reply in writing. In the event that the owner's request is granted, arrangements will be made for a copy of the requested data to be obtained by the owner. If the request is denied, the owner will be directed to Rule 41(g), Federal Rules of Criminal Procedure.

      b. A forensic image is an exact physical copy of the hard drive or other media. It is essential that a forensic image be obtained prior to conducting any search of the data for information subject to seizure pursuant to this warrant. A forensic image captures all of the data on the hard drive or other media without the data being viewed and without changing the data in any way. This is in sharp contrast to what transpires when a computer running the common Windows operating system is started, if only to peruse and copy data - data is irretrievably changed and lost. Here is why: When a Windows computer is started, the operating system proceeds to write hundreds of new files about its status and

15

operating environment.  These new files may be written to places on the hard drive that may contain deleted or other remnant data. That data, if overwritten, is lost permanently.  In addition, every time a file is accessed, unless the access is done by trained professionals using special equipment, methods and software, the operating system will re-write the metadata for that file.  Metadata is information about a file that the computer uses to manage information.  If an agent merely opens a file to look at it, Windows will overwrite the metadata which previously reflected the last time the file was accessed.  The lost information may be critical.

c.  Special software, methodology and equipment is used to obtain forensic images. Among other things, forensic images normally are "hashed", that is, subjected to a mathematical algorithm to the granularity of 1038 power, an incredibly large number much more accurate than the best DNA testing available today. The resulting number, known as a "hash value" confirms that the forensic image is an exact copy of the original and also serves to protect the integrity of the image in perpetuity.  Any change, no matter how small, to the forensic image will affect the hash value so that the image can no longer be verified as a true copy.
Forensic Analysis

d.      After obtaining a forensic image, the data will be analyzed. Analysis of the data following the creation of the forensic image is a highly technical process that requires specific expertise, equipment and software. There are literally thousands of different hardware items and software programs that can be commercially purchased, installed and custom-configured on a user's computer system.  Computers are easily customized by their users.  Even apparently identical computers in an office environment can be significantly different with respect to configuration, including permissions and access rights, passwords, data storage and

16

security.  It is not unusual for a computer forensic examiner to have to  obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

      e.     Analyzing the contents of a computer, in addition to requiring special technical skills, equipment and software also can be very tedious.  It can take days to properly search a single hard drive for specific data.  Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant.  Merely finding a relevant "hit" does not end the review process.  As mentioned above, the computer may have stored information about the data at issue: who created it, when it was created, when was it last accessed, when was it last modified, when was it last printed and when it was deleted. Sometimes it is possible to recover an entire document that never was saved to the hard drive if the document was printed.  Operation of the computer by non-forensic technicians effectively destroys this and other trace evidence.  Moreover, certain file formats do not lend themselves to keyword searches.  Keywords search text. Many common electronic mail, database and spreadsheet applications do not store data as searchable text.  The data is saved in a proprietary non-text format.  Microsoft Outlook data is an example of a commonly used program which stores data in a non-textual, proprietary manner– ordinary keyword searches will not reach this data.  Documents printed by the computer, even if the document never was saved to the hard drive, are recoverable by forensic examiners but not discoverable by keyword searches because the printed document is stored by the computer as a graphic image and not as text.  Similarly, faxes sent to the computer are stored as graphic images and not as text.

17

f. Analyzing data on-site has become increasingly impossible as the volume of data stored on a typical computer system has become mind-boggling. For example, a single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Computer hard drives are now capable of storing more than 100 gigabytes of data and are commonplace in new desktop computers. And, this data may be stored in a variety of formats or encrypted. The sheer volume of data also has extended the time that it takes to analyze data in a laboratory. Running keyword searches takes longer and results in more hits that must be individually examined for relevance. Even perusing file structures can be laborious if the user is well-organized. Producing only a directory listing of a home computer can result in thousands of pages of printed material most of which likely will be of limited probative value.

g. Based on the foregoing, searching any computer or forensic image for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained; criminals can mislabel and hide files and directories, use codes to avoid using keywords, encrypt files, deliberately misspell certain words, delete files and take other steps to defeat law enforcement. In light of these difficulties, your affiant requests permission to use whatever data analysis techniques reasonably appear necessary to locate and retrieve digital evidence within the scope of this warrant.

i. All forensic analysis of the imaged data will be directed exclusively to the identification and seizure of information within the scope of this warrant.

49.    Based on my knowledge, training and experience, I know that individuals engaged in fraud in connection with aggravated identity theft are likely to have and/or keep the items listed in Attachment "B" on their persons, in their vehicles and in their residences.

50.    I believe these items sought in the search warrant will be located or found within the location(s) listed, and will help to further the investigation and/or prosecution the conspiracy that's pending against the listed subject(s), and to identify other conspirators who may be involved.

51.    Assistant United States Attorney Lance Caldwell, United States Attorney's Office, District of Oregon has reviewed this affidavit and informs me it is factually sufficient. *Because of the ongoing investigation I request this affidavit applies and search warrant be sealed. Sw*

~~Deputy William Behan~~ & Special Agent Scott McGeach

~~Clackamas County Sheriffs Office~~ DOS - ci's

~~Special Investigations Unit.~~

**SUBSCRIBED AND SWORN TO** me this _13th_ day of _April_ in San Diego, California.

_____

**Leo S. Papas**

**United States Magistrate Judge**

**ATTACHMENT B-DESCRIPTION OF ITEMS TO BE SEIZED**

The items to be seized are the following items that were instrumentalities, or contain or constitute evidence or fruits, of the crimes of fraud by use of false identification, access device fraud, interstate transportation of stolen goods, bank fraud and money laundering. In addition, documents, books and records, correspondence, equipment, files and other information pertaining to the income, expenses and assets of Bradley David Maier. Bradley Maier for the period beginning for the time period 2001 through the present:

1) Any and all documents, identifications, related to the following names, alias, identity, false names including, but not limited to:

    a) Bradley Maier

    b) John A Smith

    c) ADM & Associates

2) Images or partial images of plastic cards used in the manufacturing of access devices, counterfeiting or access devices, photos of different forms of identification cards including but not limited to drivers licenses, state identification cards, passports, birth certificates, college identification cards, counterfeit securities and false documents:

3) Lists containing credit card and/or access device numbers

4) Computerized listings of payment, schedules, ledgers and journals reflecting receipt or distribution of funds related to counterfeiting equipment and aggravated id theft

5) Documents, books and records, files, other information and items relevant to reconstructing the income, expenses, assets and taxable income of Bradley Maier and/or the use of any alias names to earn and hide income:

6) Copies of federal and state tax returns business and personal, tax preparation files, tax records such as forms 1099 and W-2 forms, 941's, 940's and documentation or correspondence evidencing dealings with an accountant or tax preparer.

7) Checking, savings account and investment account records, including but not limited to: signature cards, cancelled checks, deposit slips, deposit receipts, records of loans, passbooks, bank statements, certificates of deposit, stocks, bonds, wire transfer advices, wire transfer confirmations, photos of assets, related bank advices, safe deposit box, loan documents, loan applications, loan payment records, cashier's checks and receipts, official checks and money order purchases, credit card records, financial statements, correspondence, other bank related transaction documents, and

1

any and all documents relating to personal, business, foreign accounts in any foreign or domestic financial institution.

8) Records, information or documents that reflect the receipt and disposition of funds for property, cars, televisions, vehicle, any foreign and domestic businesses and any and all other assets including properties, mortgages, deeds, titles, certificates of ownership, and registration

9) Applications for credit, financial statements, credit files and all records relating to credit applications, credit accounts, credit cards, loan applications, cash, and loans, bank accounts

10) Records of purchase or dispositions of cashiers checks, money orders, wire transfers, merchant charges and other negotiable instruments.

11) Telephone records, cell phone records, cell phones, PDA's and any other storage device including personal telephone and address books, both written and electronic form

12) Passports and false passports

13) Images of bank routing numbers and bank account numbers

14) Safe deposit box records and safe deposit box keys for any box maintained by Bradley Maier including any boxes rented under false identification or aliases:

15) Cash and currency including any packaging, bundling, wrappings or notations, jewels, gold and silver coins, negotiable instruments as evidence of the fruits of the crime

16) Records relating to the locations of mail drops, mail box facilities and post office boxes, mailings, letters, Federal Express, UPS, DHL related to individual and/or corporations

17) Identification documents, debit and credit cards and bank documents belonging to, or relating to accounts in the name of people other than members of the conspiracy

2

18) Mortgages and other records of indebtedness, deeds, titles, certificates of ownership, and registration;

19) Listings of payment schedules, ledgers and journals reflecting receipt or distribution of funds related to aggravated identity theft;

20) Programs, software, and other data used in the making of items pertaining to the crime of aggravated identity theft, including but not limited to; state identification, college identification, birth certificates, social security cards, bank records, credit cards, bank cards, check books, business checks and personal business cards.

23. Computer or data processing software or data including, but not limited to: hard disks, floppy disks, diskettes, compact disks, CD-ROMs, DVDs, optical discs, Zip cartridges, zip drives, jump drives, or any other device used to plug into a port on a computer and store digital media, magnetic tapes, integral RAM or ROM units, "all in one" scanner-printers and any other permanent or transient storage device(s);

24. Computing or data processing documentation, including, but not limited to: instruction books, notes, papers, or computer programs in whole or in part;

25. Passwords and data security devices, including any hardware, software, programming code, or passwords designed to restrict access to or hide computer software, documentation, or data;

26. Records, documents, or materials, in handmade or mechanical form (such as printed, written, handwritten, or typed); photocopies or other photographic form; and electrical, electronic, and magnetic form (such as tapes, cassettes, hard disks, floppy disks, diskettes, compact disks, CD-ROMs, DVDs, optical discs, Zip cartridges, printer buffers, smart cards, or electronic notebooks, or any other storage medium);

27. Images or partial images of victims in any form and images or partial images of suspects and/or their associates or scanned images or partial images of the same;

28. Software used in the scanning, printing, altering, enhancing or storing of digital images;

29. Correspondence, notes, memos, containing information relating to the crime of aggravated identity theft or related crimes;

30. Records related to manufacture, production, use or disposition of false identities;

31. Images of security features for any given government document, including but not limited to; U.S. currency, birth certificates, state identifications, passports, government identification, security passcards and any other form of private, state or federal identification.

32. The seizure and search of computers and computer media will be conducted in accordance with those set forth in the affidavit submitted in support of this warrant.